**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered) |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as First Lien Administrative Agent and First Lien Collateral Agent,<br><br>Plaintiff,<br><br>v.<br><br>ALTER DOMUS (US) LLC, as Second Lien Administrative Agent and Second Lien Collateral Agent,<br><br>Defendant. | Adv. Proc. No. 25-_____ (LSS) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

## ADVERSARY COMPLAINT

Wilmington Trust, National Association, solely in its capacities as successor administrative agent and collateral agent under the First Lien Credit Agreement (as defined below) (the "**First Lien Agent**" or "**Plaintiff**"), by and through undersigned special litigation counsel, hereby brings this Adversary Proceeding Complaint against the above-captioned defendant, Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent for the lenders under the Second Lien Credit Agreement (as defined herein) (the "**Second Lien Agent**" or "**Defendant**"). Plaintiff alleges on personal knowledge as to its own acts and deeds, and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action in response to the Defendant's breach of the Amended and Restated First Lien/Second Lien Intercreditor Agreement dated November 22, 2021 (the "**Intercreditor Agreement**" or "**ICA**," attached as **Exhibit A**) governing the relationship between the holders of first and second lien debt issued by certain of the Debtors. Specifically, the Second Lien Agent,[2] as the agent and representative for the Second Lien Secured Parties, has violated the rights of the First Lien Agent and the First Lien Secured Parties by, together with the Freedom Lender Group, moving the Court (the "**Administrative Claim Motion**")[3] for an order allowing a superpriority administrative expense claim (the "**AP Claim**") "under the terms of the DIP Orders[] and sections 503 and 507(b) of the Bankruptcy Code"[4] on account of alleged diminution in value of the Second Lien Secured Parties' collateral from the Petition Date to the present.

---

[2] Capitalized terms not defined in this section of the Complaint, Nature of the Action, have the meanings ascribed to such terms in the remainder of the Complaint.

[3] See Motion for Allowance of a Superpriority Administrative Expense Claim [Main Dkt. No. 978].

[4] Administrative Claim Mot. at 2.

2.      Setting aside the Administrative Claim Motion's lack of merit, which will be demonstrated in response to that motion, the result the motion seeks—specifically, a payment from Collateral that secures the First Lien Obligations—violates the Second Lien Agent's clear and unambiguous obligations and undertakings under the Intercreditor Agreement, in which the Second Lien Secured Parties (a) agreed they would not take or receive any Collateral or proceeds therefrom until the First Lien Obligations have been paid in full in cash, (b) obligated themselves to turn over to the First Lien Secured Parties any such proceeds or Collateral they might receive; and (c) consistent with the foregoing, negotiated away and ceded their rights to even commence or maintain an action to recover from Collateral until the First Lien Obligations have been fully satisfied. The Second Lien Agent's continuing violation of the Intercreditor Agreement has injured the First Lien Agent (and the First Lien Secured Parties) and threatens to further delay and substantially increase the administrative cost and burden of these proceedings.

3.      Accordingly, Plaintiff seeks through this action to (a) obtain a declaration of its rights under the Intercreditor Agreement, including that the Defendant is prevented from receiving any payment on account of its AP Claim and must turn over any such payment it may receive, (b) compel the Defendant to specifically perform its obligations under the Intercreditor Agreement, and (c) enjoin the Defendant from further breaches of the Intercreditor Agreement.

## JURISDICTION & VENUE

4.      On November 4, 2024 (the "**Petition Date**"), Franchise Group, Inc. ("**FRG**" or "**Franchise Group**"), together with its subsidiaries and affiliates that are debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Debtors**"), each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code.  The Debtors continue to operate their businesses and manage their respective properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this matter. On November 19, 2024, the United States Trustee for Region 3 appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Committee**") [Docket No. 188]. On November 11, 2024, the Debtors filed with the Court the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150] (as amended, supplemented, or modified from time to time, the "**Plan**") and the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 151] (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**"). On December 11, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief,* [Docket No. 414] (the "**Final DIP Order**").

5.    The Final DIP Order provides that

[p]ursuant to section 510 of the Bankruptcy Code, the [Intercreditor Agreement],[5] and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including, for the avoidance of doubt, with respect to the Adequate Protection Liens) and DIP Secured Parties (as if the DIP Agent was party thereto as a First Lien Term Loan Representative, in the case of the Prepetition ABL Intercreditor Agreement), and (iii) shall not be deemed amended, altered or modified by the terms of this Final Order, except to the extent expressly set forth herein.

Final DIP Order ¶ 37.  In addition, under the Final DIP Order, the Court

---

[5] The Intercreditor Agreement is defined under the Final DIP Order as the "Prepetition 1L/2L Intercreditor Agreement" and, together with the Prepetition ABL Intercreditor Agreement (as defined therein) the "**Prepetition Intercreditor Agreements**." Final DIP Order ¶ F.(g)(ii).

retains jurisdiction to hear, determine and, if applicable, enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Loan Documents, ***the Prepetition Intercreditor Agreements***, the Interim Order, and this Final Order[.]

*Id.* ¶ 48 (emphasis added).

6.      Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy Code, which will be effective before, during and after the commencement of an Insolvency or Liquidation Proceeding."  Ex. A, ICA § 6.10.

7.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

8.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157, 1334 and 2201.

9.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (L), and (O).

10.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

11.     Defendant Alter Domus (US) LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 225 W. Washington Street, 9th Floor, Chicago, Illinois 60606. Defendant is the administrative agent under that certain *Second Lien Credit Agreement,* dated as of March 10, 2021 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Second Lien Credit Agreement**"), among Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as the Borrowers, the guarantors party thereto (the "**Second**

Lien Loan Guarantors," and together with the Borrowers, the "**Second Lien Loan Parties**"),

and the lenders party thereto from time to time (collectively, the "**Second Lien Lenders**," and

together with the Second Lien Agent, the "**Second Lien Secured Parties**" to the "**Second Lien**

**Facility**").  The Defendant is also a signatory to the Intercreditor Agreement.

12.     Plaintiff Wilmington Trust, National Association, is a national banking association

with its principal place of business in Delaware. Plaintiff is the collateral agent and administrative

agent under that certain *First Lien Credit Agreement*, dated as of March 10, 2021 (as amended,

amended and restated, supplemented, or otherwise modified from time to time, the "**First Lien**

**Credit Agreement**," and together with all other agreements, guarantees, pledge, collateral and

security documents, control agreements, instruments, certificates, notes, and other documents

executed, recorded and/or delivered in connection therewith, including, without limitation, the

Loan Documents (as defined in the First Lien Credit Agreement) and the Intercreditor Agreement,

collectively, the "**First Lien Loan Documents**") among the Borrowers,[6] the guarantors party

thereto (the "**First Lien Guarantors**", and together with the Borrowers, the "**First Lien Loan**

**Parties**"), and the lenders party thereto from time to time (collectively, the "**First Lien Lenders**,"

and together with the First Lien Agent, the "**First Lien Secured Parties**" to the "**First Lien**

**Facility**").[7]

---

[6] The Loan Parties under the First Lien Facility (as defined herein) are also the Loan Parties under the Second Lien Facility.

[7] The Required Lenders (as defined under the First Lien Credit Agreement) provided the necessary direction to the First Lien Agent to commence this action.

## APPLICABLE LAW

13.     The Intercreditor Agreement is enforceable against the Second Lien Agent in these cases pursuant to Section 510(a) of the Bankruptcy Code.

14.     The Plaintiff and Defendant expressly agreed in section 8.13 of the Intercreditor Agreement that it "shall be governed by, and construed and interpreted in accordance with, the law of the state of New York[.]"

15.     Section 3.2 of the Intercreditor Agreement provides that the First Lien Agent "may demand specific performance" of the agreement.

## FACTUAL BACKGROUND

### A.  The Intercreditor Agreement

16.     On March 10, 2021, Franchise Group obtained a $1.3 billion financing package of which (a) $1 billion in original principal commitments was provided by the First Lien Lenders under the First Lien Facility, and (b) $300 million in original principal commitments was provided by the Second Lien Lenders under the Second Lien Facility.  All of Franchise Group's obligations to the First Lien Lenders and the Second Lien Lenders, under the First Lien Facility and Second Lien Facility, respectively, are secured by liens on the same collateral pool—substantially all of Franchise Group's assets.  To set forth the relative obligations, priorities, and rights, including enforcement rights, of the First Lien Lenders, on the one hand, and the Second Lien Lenders (including the Freedom Lender Group[8]), on the other hand, on November 22, 2021, the respective agents for the First Lien Lenders and Second Lien Lenders entered into the Intercreditor

---

[8] The "**Freedom Lender Group**" is made up of certain Second Lien Lenders who hold approximately 93% of the loans under the Second Lien Facility, namely certain funds and accounts advised, sub-advised, and/or managed by (i) Pacific Investment Management Company LLC and/or its affiliates and (ii) Irradiant Partners, LP and/or its affiliates in their capacities as Second Lien Secured Parties.

Agreement, which governs, among other things, the Collateral (as defined under the Intercreditor Agreement) and the parties' rights with respect thereto.

17.     ***The First Lien Credit Agreement.***   Pursuant to the First Lien Credit Agreement, the First Lien Lenders provided the First Lien Facility to the First Lien Loan Parties in the original aggregate principal amount of $1,000,000,000.00. The First Lien Loan Parties granted the First Lien Agent, for the benefit of itself and the other First Lien Secured Parties, properly perfected and continuing liens and security interests (collectively, the "**First Liens**") in substantially all of the assets of the First Lien Loan Parties. The First Liens are senior to the Second Liens (as defined below) and a first lien ABL facility (the "**ABL Facility**"). As of the Petition Date, approximately $1.097 billion on account of principal amounts is outstanding under the First Lien Facility, exclusive of any accrued and unpaid interest that was capitalized and added to the principal balance.[9]

18.     Under the First Lien Loan Documents, each of the First Lien Guarantors, among other things, unconditionally and irrevocably guaranteed the payment in full in cash of all principal amounts outstanding under the First Lien Facility, plus accrued but unpaid interest (including default interest) thereon, plus all fees, costs, expenses, charges, disbursements, indemnification and reimbursement obligations, including all "Loan Document Obligations," "Secured Obligations," and all other amounts that may be due or owing under the First Lien Loan Documents (collectively, the "**First Lien Obligations**").

19.     ***The Second Lien Credit Agreement***.   Pursuant to the Second Lien Credit Agreement, the Second Lien Lenders provided the Second Lien Facility to the Second Lien Loan

---

[9] *See Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings,* [Main Dkt. No. 15] ¶ 56; Claim No. 1211 ¶ 12.

Parties in the original aggregate principal amount of $300,000,000.00. The Second Lien Loan Parties granted the Second Lien Agent, for the benefit of itself and the other Second Lien Secured Parties, properly perfected and continuing liens and security interests (collectively, the "**Second Liens**") in substantially all of the assets of the Second Lien Loan Parties. The Second Liens are junior to the liens granted to the First Lien Lenders and the ABL Facility. As of the Petition Date, approximately $125 million on account of principal amounts is outstanding under the Second Lien Facility, exclusive of any accrued and unpaid interest.[10]

20. Additionally, pursuant to the Second Lien Loan Documents, each of the Second Lien Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all principal amounts outstanding under the Second Lien Facility, plus accrued but unpaid interest thereon, plus all fees, costs, expenses, charges, disbursements, indemnification and reimbursement obligations, including all "Loan Document Obligations," and all other amounts that may be due or owing under the Second Lien Loan Documents (collectively, the "**Second Lien Obligations**").

### a.  Subordination of Second Lien Lenders' Rights to Those of First Lien Lenders

21. The Intercreditor Agreement ensures that the First Lien Secured Parties remain senior to the Second Lien Secured Parties with respect to collateral in which they both have overlapping liens (the "**Collateral**"). The Intercreditor Agreement defines this "Collateral" as

> all of the assets and property of any Grantor . . . in which the holders of First Lien Obligations . . . and the holders of Second Lien Obligations . . . hold, purport to hold or are required to hold, a security interest at such time . . ., including any property subject to Liens granted pursuant to Section 6 to secure both First Lien Obligations and Second Lien Obligations.

---

[10] *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings,* [Main Dkt. No. 15] ¶ 59.

Ex. A, ICA § 1.1. The Intercreditor Agreement expressly subordinates the Second Lien Secured

Parties' interests in the Collateral to those of the First Lien Secured Parties.

22.    Under Section 2.1 of the Intercreditor Agreement,

> [n]otwithstanding the date, time, method, manner or order of grant, attachment or perfection of any Liens securing the Second Lien Obligations granted on the Collateral or of any Liens securing the First lien Obligations granted on the Collateral . . ., each Second Lien Representative and each Second Lien Collateral Agent, for itself and on behalf of each other Second Lien Claimholder represented by it, hereby agrees that: (a) ***any Lien on the Collateral securing any First Lien Obligations now or hereafter held*** by or on behalf of any First Lien Representative, any First Lien Collateral Agent or any First Lien Claimholderes or any agent or trustee therefor, ***regardless of how acquired,*** . . . ***shall be senior in all respects and prior to any Lien on the Collateral securing any Second Lien Obligations***; [and] (b) any Lien on the Collateral securing any Second Lien Obligations . . . regardless of how acquired, . . . shall be ***junior and subordinate in all respects to all Liens on the Collateral securing any First Lien Obligations***.

Ex. A, ICA § 2.1 (emphasis added). In other words, section 2.1 of the Intercreditor Agreement

provides that the First Lien Secured Parties have priority over and are senior to any Second Lien

Secured Parties with respect to Collateral, including Collateral "subject to Liens granted pursuant

to <u>Section 6</u> ["**Insolvency or Liquidation Proceedings**"][.] *Id.* § 1.1.

23.    In turn, Section 6 of the Intercreditor Agreement addresses the Plaintiff's and

Defendant's right, obligations, and priorities where, as here, the Borrowers are subject to

"Insolvency or Liquidation Proceedings." Section 6.3(b) of the Intercreditor Agreement provides

that

> in any Insolvency or Liquidation Proceeding: . . . (2) the Second Lien Representatives, the Second Lien Collateral Agents and Second Lien Claimholders shall only be permitted to seek adequate protection with respect to their rights in the Collateral in any Insolvency or Liquidation Proceeding in the form of: (A) ***additional collateral*** . . .; <u>provided</u> that as adequate protection for the First Lien Obligations, each First Lien Collateral Agent, on behalf of the First

Lien Claimholders represented by it, is also granted a Lien on such additional collateral, which Lien ***shall be senior*** to any Lien of the Second Lien Representatives, the Second Lien Collateral Agents and the Second Lien Claimholders on such additional collateral; (B) ***replacement Liens*** on the Collateral; <u>provided</u> that as adequate protection for the First Lien Obligations, each First Lien Collateral Agent, on behalf of the First Lien Claimholders represented by it, is also granted replacement Liens on the Collateral, which Liens ***shall be senior*** to the Liens of the Second Lien Representatives, the Second Lien Collateral Agents and the Second Lien Claimholders on the Collateral; (C) an ***administrative expense claim*** in respect of Collateral; <u>provided</u> that as adequate protection for the First Lien Obligations, each First Lien Representative, on behalf of the First Lien Claimholders represented by it, is also granted an administrative expense claim in respect of the Collateral ***which is senior and prior to the administrative expense claim of the Second Lien Representatives and the other Second Lien Claimholders***[.]

Ex. A, ICA § 6.3(b) (emphasis added). Accordingly, the Intercreditor Agreement expressly provides that for the purposes of these chapter 11 cases, adequate protection sought by, or granted to, the Second Lien Secured Parties in the form of additional collateral, replacement liens, or an administrative expense claim (i.e. of the type sought in the Administrative Claim Motion), among other forms of adequate protection, are indisputably junior in priority to the adequate protection correspondingly provided to the First Lien Secured Parties.

24.    Here, on December 11, 2024, the Court approved the Debtors' request, on a final basis, for entry of an order authorizing the Debtors to obtain DIP financing with a priming lien, utilize cash collateral, and grant adequate protection to prepetition secured parties, including the First Lien Secured Parties and the Second Lien Secured Parties, all as more fully provided in the Final DIP Order.

25.    Specifically, as adequate protection under the Final DIP Order, the First Lien Secured Parties and Second Lien Secured Parties were granted, respectively, First Lien Adequate Protection Liens and Second Lien Adequate Protection Liens "in all DIP Collateral," "to the extent and in the amount of any Diminution in Value[.]" *See* Final DIP Order §§ 10(c)(ii) and 10(e)(ii).

In turn, the Final DIP Order provides that "DIP Collateral" includes "all assets and properties of each of the DIP Loan Parties and their estates, of any kind or nature whatsoever, . . . whether now owned or consigned by or to, . . . or hereafter acquired by, or arising in favor of, any of the DIP Loan Parties . . ., whether prior to or after the Petition Date . . . including, without limitation, . . . (ii) all money, cash and cash equivalents, . . . and all rents, products, offspring, profits, and proceeds of each of the foregoing . . . [.]" *Id.* § 6(b). Accordingly, pursuant to Section 6.3 of the Intercreditor Agreement, and as adequate protection under the Final DIP Order, the First Lien Secured Parties and Second Lien Secured Parties were granted replacement liens in all "DIP Collateral" (as defined in the Final DIP Order). *See* Ex. A, ICA § 6.3(b)(2)(A); *see also* Final DIP Order ¶¶ 10(c)(ii), 10(e)(ii).

26.     Consistent with the Intercreditor Agreement, the Final DIP Order makes clear that the First Lien Adequate Protection Liens are senior to the Second Lien Adequate Protection Liens. *See* Final DIP Order ¶¶ 10(c)(ii), 10(e)(ii), Exhibit 2.

27.     Inasmuch as the First Lien Adequate Protection Liens and Second Lien Adequate Protection Liens attach to all DIP Collateral, which includes all current and future assets of the Debtors, all assets of the Debtors whenever acquired by the Debtors, constitute Collateral under the Intercreditor Agreement, and thus all assets of the Debtors are subject to the Intercreditor Agreements priorities, covenants, and restrictions.

   **b.  Second Lien Secured Parties' Inability to Receive Payment On Account of Collateral Until First Lien Lenders Are Repaid in Full**

28.     Section 3.1(a)(1) of the Intercreditor Agreement prohibits the Second Lien Secured Parties from exercising rights or remedies in respect of the Collateral, providing that, "[u]ntil the Discharge of First Lien Obligations has occurred," the Second Lien Secured Parties are broadly

prohibited from "commenc[ing] or maintain[ing] . . . any Enforcement Action or otherwise

exercis[ing] any rights or remedies with respect to the Collateral . . . ." Ex. A, ICA § 3.1(a)(1).

29.    The Intercreditor Agreement defines "Discharge" to mean

> [w]ith respect to any Series of First Lien Obligations . . ., each of the
> following has occurred: (i) payment in full in cash of the principal
> of and interest (including interest accruing on or after the
> commencement of any Insolvency or Liquidation Proceeding,
> whether or not such interest would be allowed in such Insolvency or
> Liquidation Proceeding) on all Indebtedness outstanding under the
> applicable First Lien Loan Documents and constituting First Lien
> Obligations of such series . . .; (ii) payment in full in cash of all
> Hedging Obligations and all Bank Product Obligations constituting
> First Lien Obligations . . ., or the cash collateralization of all such
> applicable . . . Obligations; (iii) payment in full in cash of all other
> First Lien Obligations . . . under the applicable First Lien Loan
> Documents . . . of such Series that are due and payable or otherwise
> accrued and owing at or prior to the time such principal and interest
> are paid . . .; (iv) termination or expiration of all commitments, if
> any, to extend credit that would constitute First Lien Obligations . .
> . under such Series; [among other and similar payments in full in
> cash, with respect to Excess First Lien Obligations].

*Id.* § 1.1.

30.    In turn, "Enforcement Action" is defined as "any action to," among other things,

"exercise [a] right or remedy, as a secured creditor or otherwise, pertaining to the Collateral at law,

in equity, or pursuant to the . . . Second Lien Loan Documents . . . ." *Id.*

31.    Similarly—and even more critically here—section 3.1(c) of the Intercreditor

Agreement provides that

> [e]ach Second Lien Representative and each Second Lien Collateral
> Agent, . . . agrees that it ***will not take or receive any Collateral or
> any proceeds of Collateral*** in connection with the exercise of any
> right or remedy with respect to any Collateral (including set-off and
> recoupment) in its capacity as a creditor, unless and ***until the
> Discharge of First Lien Obligations has occurred***, ***except*** as
> expressly permitted by <u>Section 3.1(a)(1)</u> ***to the extent such Second
> Lien Representative or such Second Lien Collateral Agent*** and

> Second Lien Claimholders represented by it **_are permitted to retain_**
> **_the proceeds thereof in accordance with <u>Section 4.2</u>_** of th[e] [ICA].

Ex. A, ICA § 3.1(c). Thus, under Section 3.1(c), until the First Lien Obligations have been paid in

full in cash, the Second Lien Secured Parties are prohibited from ever recovering on their purported

AP Claim sought in the Administrative Claim Motion, as they cannot "take or receive" any

Collateral or any proceeds of Collateral (i.e., all property of the Debtors).

### c.   Requirement That Proceeds of Collateral Be Turned Over to First Lien Agent

32.     Section 4.2 of the Intercreditor Agreement requires that any Collateral or proceeds

thereof received by the Second Lien Secured Parties "in connection with any Enforcement Action

or other exercise of any right or remedy relating to the Collateral" (less expenses) "in all cases

shall be segregated and forthwith paid over to the Designated First Lien Collateral Agent for the

benefit of the First Lien Claimholders in the same form as received, with any necessary

endorsements . . . or as a court of competent jurisdiction may otherwise direct." *Id.* § 4.2(a). This

requirement is "irrevocable until the Discharge of First Lien Obligations." *Id.*

33.     Such requirement is expressly applicable in an insolvency proceeding:

> if in any Insolvency or Liquidation Proceeding any Second Lien
> Representative, any Second Lien Collateral Agent or any other
> Second Lien Claimholder shall receive any distribution of money or
> other property in respect of the Collateral or proceeds thereof . . .
> such money or other property . . . shall be segregated and forthwith
> paid over to the Designated First Lien Collateral Agent for the
> benefit of the Frist Lien Claimholders in the same form as received,
> with any necessary endorsements . . . . This authorization is coupled
> with an interest and is irrevocable until the Discharge of the First
> Lien Obligations. Any Lien received by any Second Lien
> Representative, any Second Lien Collateral Agent or any other
> Second Lien Claimholder in respect of any of the Second Lien
> Obligations in any Insolvency or Liquidation Proceeding shall be
> subject to the terms of this Agreement.

*Id.* § 4.2(b). Accordingly, the Intercreditor Agreement expressly provides that, even if the Second

Lien Secured Parties were to ever receive any payment from the Debtors  or their estates, of, or as

a result of a recovery against, or with respect to, Collateral or proceeds therefrom, which Collateral includes all property of the Debtors, whether presently held or hereafter acquired (under the Final DIP Order and ICA), the Second Lien Secured Parties are required to pay over such distribution to the First Lien Secured Parties under Section 4.2 of the Intercreditor Agreement.

34.     In addition, pursuant to Section 6.3(b)(3) of the Intercreditor Agreement,

> [i]f any Second Lien Claimholder receives Post-Petition Interests and or ***cash adequate protection payments in respect of the Collateral in an Insolvency or Liquidation Proceeding*** . . . and the Discharge of First Lien Obligations does not occur upon the effectiveness of the plan of reorganization for, or conclusion of, that Insolvency or Liquidation Proceeding, then each Second Lien Claimholder shall pay over to the First Lien Claimholders an amount (the "**Pay-Over Amount**") equal to the lesser of (i) the [cash adequate protection payments] received by such Second Lien Claimholder [in respect of the Collateral] and (ii) the amount of the short-fall (the "**Short Fall**") in the Discharge of the First Lien Obligations[.]

Ex. A, ICA § 6.3(b)(3). Accordingly, any cash adequate protection payments that the Second Lien Secured Parties might receive on account of their AP Claim must be paid over to the First Lien Secured Parties unless and until the First Lien Obligations are entirely paid in full in cash.

35.     Finally, the Intercreditor Agreement entitles the First Lien Secured Parties to demand specific performance or other equitable relief against any Second Lien Secured Party where it, "in any way takes, attempts to or threatens to take any action with respect to the Collateral (including any attempt to realize upon or enforce any remedy with respect to this Agreement), or fails to take any action required by this Agreement[.]" *Id.* § 3.2.

### d.  Limited Permitted Actions by Second Lien Parties in Insolvency Proceedings

36.     The broad prohibition of the Second Lien Secured Parties exercising rights or remedies with respect to the Collateral continues to apply if "any Loan Party shall be subject to any Insolvency or Liquidation Proceeding," subject to certain limited actions that are carved out

15

from this blanket prohibition. Ex. A, ICA § 3.1(a)(1). Specifically, in any such proceeding, the

Second Lien Secured Parties "may take any action expressly permitted by Section 3.1(c), Section

3.1(e)[11] or Section 6" of the Intercreditor Agreement. *Id.*

37.    Section 3.1(c) of the Intercreditor Agreement provides, among other things, that the

Second Lien Secured Parties may:

> (1) file a claim or statement of interest with respect to the Second
> Lien Obligations; provided that an Insolvency or Liquidation
> Proceeding has been commenced by or against any Loan Party. . . .
> [and]
>
> (4) vote on any plan of reorganization, arrangement, compromise or
> liquidation, file any proof of claim, make other filings and make any
> arguments and motions that are, in each case, in accordance with the
> terms of this Agreement, with respect to the Second Lien
> Obligations and the Collateral; provided that no filing of any claim
> or vote, or pleading related to such claim or vote, to accept or reject
> a disclosure statement, plan of reorganization, arrangement,
> compromise or liquidation, or any other document, agreement or
> proposal similar to the foregoing by any Second Lien
> Representative, any Second Lien Collateral Agent or any other
> Second Lien Claimholder may be inconsistent with the provisions
> of this Agreement[.]

*Id.* § 3.1(c)(1), (4).

38.    No provision of the Intercreditor Agreement permits the Second Lien Secured

Parties to seek to obtain payment in a bankruptcy case from Collateral before the First Lien

Obligations have been paid in full in cash, which would contravene the provisions discussed above.

---

[11] Section 3.1(e) is inapplicable here because only a secured creditor may seek adequate protection such as that sought through the Administrative Claim Motion.

**B. Defendant's Breach of the Intercreditor Agreement**

**a. The Plan of Reorganization**

39.    Prior to the Petition Date, the Debtors entered into a Restructuring Support Agreement (the "**RSA**") with an ad hoc group of certain First Lien Lenders (the "**First Lien Group**"). On November 11, 2024, the Debtors filed the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150] (as amended, supplemented, or modified from time to time, the "**Plan**") and the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 151] (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**") with the Court. The Debtors filed amended versions of the Plan and the Disclosure Statement on January 3, 2025 [Docket Nos. 654 and 655], February 3, 2025 [Docket Nos. 894 and 895], February 5, 2025 [Docket Nos. 925 and 926], February 12, 2025 [Docket Nos. 957 and 958], February 18, 2025 [Docket Nos. 995 and 996] and February 20, 2025 [Docket Nos. 1014 and 1015] (respectively, the "**Sixth Amended Disclosure Statement**" and the "**Sixth Amended Plan**").

40.    Under the Plan, "[i]n full and final satisfaction" of the claims arising under or on account of the First Lien Facility, on the effective date of the Plan, the holders of such claim will receive (a) certain proceeds from one or more sales of less than all of the Collateral, if applicable, and (b) 100% of the equity interests to be issued by the Debtors upon emergence from bankruptcy (the "**Equitization Transaction**"). *See* Plan § 5.4. Under no realistic scenario will the First Lien Obligations be paid in full in cash under the Plan.

**b. The Administrative Claim Motion**

41.    On February 13, 2025, the Second Lien Agent and certain funds and accounts advised, sub-advised, and/or managed by (i) Pacific Investment Management Company LLC

and/or its affiliates and (ii) Irradiant Partners, LP and/or its affiliates in their capacities as Second

Lien Secured Parties (the Freedom Lender Group, and together with the Second Lien Agent, the

"**Second Lien Movants**"), filed the Administrative Claim Motion, seeking entry of an order

allowing the Second Lien Secured Parties a superpriority administrative expense claim in the

amount of $158,383,581.40 pursuant to sections 503 and 507(b) of the Bankruptcy Code, and the

Final DIP Order, for alleged diminution in the value of their interests in the collateral securing the

Second Lien Obligations.

42.    Through the Administrative Claim Motion, the Second Lien Movants assert that,

as of the Petition Date, the value of the Collateral—i.e. all of the Debtors' assets—was greater than

the aggregate secured debt (i.e., first and second lien debt, including postpetition obligations) of

the Debtors.  The Second Lien Movants take the foregoing position because, as contemplated by

the Equitization Transaction and demonstrated by the record in these chapter 11 cases, "the value

of the Collateral[,]" the only source of any distribution the Second Lien Secured Parties may ever

receive under the Plan, "is insufficient to provide even a dollar of value to the [Second Lien]

Secured Parties."[12]

43.    Inasmuch as the Administrative Claim Motion is premised on the allegation that

there has been diminution in value of the Second Lien Secured Parties' interest in their Collateral,

the filing and prosecution of the Administrative Claim Motion is an "Enforcement Action" "with

respect to Collateral" that is prohibited under Section 3.1(a)(1) of the Intercreditor Agreement,

unless or until the First Lien Obligations have been paid in full in cash.

44.    For the avoidance of doubt, the Administrative Claim Motion seeks entry of an

order, "pursuant to sections 105, 503, and 507(b) . . . allowing the [Second Lien] Secured Parties'

---

[12] Administrative Claim Mot. ¶¶ 18-19.

Adequate Protection Claims with priority over all other administrative expense claims in the amount of $158,383,581.49."[13] In other words, the Second Lien Movants bring the Administrative Claim Motion under, among other provisions of the Bankruptcy Code, section 507(b), which only provides superpriority status to an adequate protection claim of a "holder of a claim secured by a lien on property of the debtor[,]"[14] and, thus, the Second Lien Movants could only be seeking an administrative claim in respect of Collateral, as a secured creditor.

45.    Further, in the Administrative Claim Motion, the Second Lien Movants request an AP Claim "with 'priority over every other claim allowable under [section 507(a)] of the Bankruptcy Code[,]'"[15] necessarily including the Superpriority Administrative Expense Claim of the First Lien Secured Parties. This request is at odds with the Second Lien Agent's obligations under the Intercreditor Agreement, which provides that in proceedings such as these chapter 11 cases, the Second Lien Agent

> (2) . . . shall only be permitted to seek adequate protection with respect to their rights in the Collateral . . . in the form of . . . (C) an administrative expense claim in respect of Collateral; <u>provided</u> that . . . each First Lien Representative . . . is also granted an administrative expense claim in respect of the Collateral ***which is senior and prior to the administrative expense claim of the Second Lien Representatives and the other Second Lien Claimholders***[.]

Ex. A, ICA § 6.3(b)(2)(C) (emphasis added).

46.    Here, if the Administrative Claim Motion were granted, the Defendant would cause the Debtors' Collateral, or proceeds therefrom, to be paid to the Second Lien Secured Parties in violation of the terms of the Intercreditor Agreement, only to be required to turn over such funds

---

[13] *Id.* ¶ 21.

[14] 11 U.S.C. § 507(b).

[15] Administrative Claim Mot. ¶ 32.

to the First Lien Secured Parties, consistent with the ICA.  And, even if the Debtors had assets that

were not Collateral (which, to be clear, do not exist), any recovery on account of the AP Claim

would be a recovery with respect to Collateral, which would be required to be turned over to the

First Lien Agent, absent payment in full in cash of the First Lien Obligations.

## FIRST CAUSE OF ACTION
### Declaratory Judgment Under 28 U.S.C. § 2201 That Defendant May Not Receive Payment or Distribution with Respect to Collateral Absent Discharge of First Lien Obligations

47.     Plaintiff repeats and realleges paragraphs 1-46 as if fully set forth herein.

48.     Section 510(a) of the Bankruptcy Code provides that a "subordination agreement

is enforceable in a case under this title to the same extent that such agreement is enforceable under

applicable nonbankruptcy law." 11 U.S.C. § 510(a).

49.     Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the

Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy

Code, which will be effective before, during and after the commencement of an Insolvency or

Liquidation Proceeding."  Ex. A, ICA § 6.10.

50.     Under the Final DIP Order, and pursuant to section 510(a) of the Bankruptcy Code,

the Intercreditor Agreement remains in full force and effect and continues to govern the relative

priorities, rights, and remedies of the First Lien Secured Parties and the Second Lien Secured

Parties, and, the Court retains jurisdiction to "hear, determine and, . . . enforce the terms of any

and all matters arising from or related to" the DIP Facility, the DIP Loan Documents, the

Intercreditor Agreement, and the Final DIP Order. Final DIP Order ¶¶ 37, 48.

51.     As the representative and signatory for the First Lien Lenders, Plaintiff (solely in

its capacity as First Lien Agent) is a party to the Intercreditor Agreement and is an intended

beneficiary of its provisions that definitively establish the respective priority rights of the First

Lien Secured Parties and Second Lien Secured Parties in the Collateral, and the limitations on the manner in which the Second Lien Secured Parties may be repaid out of, or in respect to, Collateral, or any proceeds therefrom, before the First Lien Obligations are discharged by being paid in full in cash. A related purpose of this and other provisions of the Intercreditor Agreement is to ensure that any restructuring or bankruptcy proceeding by the Debtors not be delayed or frustrated by disputes among creditors regarding the priority of payment.

52.     The Intercreditor Agreement expressly bars the Second Lien Secured Parties from receiving any payment or distribution, such as a payment in respect of the claim and relief sought in the Administrative Claim Motion, which would be distributed of, or in respect to, Collateral, or any proceeds therefrom absent all First Lien Obligations being discharged and satisfied. *See* Ex. A, ICA §§ 1.1, 3.1(c).

53.     As described above, this impermissible challenge, namely the Administrative Claim Motion, has forced and continues to force Plaintiff to expend time and resources in responding to the Second Lien Agent's claims and arguments, and otherwise interferes with the administration of these cases. As a direct result of the filing of the Administrative Claim Motion, Plaintiff has been and will continue to be harmed unless and until the contractual obligations under the Intercreditor Agreement are enforced.

54.     By filing the Administrative Claim Motion and seeking an order allowing the AP Claim, the Second Lien Movants, including the Defendant, have created an actual controversy within the meaning of 28 U.S.C. § 2201. Accordingly, Plaintiff respectfully requests a judgment pursuant to 28 U.S.C. § 2201 declaring the parties' respective rights and obligations under the Intercreditor Agreement, including that the Defendant, on behalf of the Second Lien Secured Parties, is prohibited from receipt of any payment or distribution of, or in respect to, Collateral, or

any proceeds therefrom, including DIP Collateral and all other assets of the Debtors, whether current assets of the DIP Loan Parties or hereafter acquired assets, all of which constitute DIP Collateral and, therefore, Collateral under the ICA, including any payment or distribution on account of the relief sought by the Second Lien Movants in the Administrative Claim Motion, before payment in full in cash of the First Lien Obligations.

55.     Plaintiff and Defendant are parties to the valid and binding Intercreditor Agreement, which is clear on its face and enforceable against the Defendant. Requiring the Defendant to abide by its terms will ensure that the resources of the estates are not wasted litigating issues that the Defendant has contractually agreed not to litigate. A declaration of the parties' rights under the Intercreditor Agreement is an expedient and efficient means of attaining the ends of justice and its prompt administration.

56.     Further, the issues raised by the Defendant's breaches of the Intercreditor Agreement have an immediate connection to the Debtors' bankruptcy proceedings and, specifically, the ability of the Debtors and/or Reorganized Debtors to satisfy administrative claims on the effective date. An adjudication of the parties' respective rights under the Intercreditor Agreement would have a direct impact on that process and could significantly affect the likelihood and efficiency of reorganizing.

57.     Accordingly, a real and substantial controversy exists between the parties with adverse legal interests and with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**SECOND CAUSE OF ACTION**
**Injunctive Relief Preventing Defendant From Receiving**
**Payment or Distribution with Respect to Collateral Absent**
**Discharge of First Lien Obligations**

58.    Plaintiff repeats and realleges paragraphs 1-57 as if fully set forth herein.

59.    Section 510(a) of the Bankruptcy Code provides that a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

60.    Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy Code, which will be effective before, during and after the commencement of an Insolvency or Liquidation Proceeding." Ex. A, ICA § 6.10.

61.    Under the Final DIP Order, and pursuant to section 510(a) of the Bankruptcy Code, the Intercreditor Agreement remains in full force and effect and continues to govern the relative priorities, rights, and remedies of the First Lien Secured Parties and the Second Lien Secured Parties, and, the Court retains jurisdiction to "hear, determine and, . . . enforce the terms of any and all matters arising from or related to" the DIP Facility, the DIP Loan Documents, the Intercreditor Agreement, and the Final DIP Order. Final DIP Order ¶¶ 37, 48.

62.    As detailed above, pursuant to the Intercreditor Agreement, Defendant has no right to payment or distribution of, or in respect to, Collateral, or any proceeds therefrom unless and until the First Lien Obligations are paid in full in cash. *See* Ex. A, ICA §§ 1.1, 3.1(c).

63.    Absent a permanent injunction barring any payment or distribution that violates the plain terms of the Intercreditor Agreement, Plaintiff will suffer irreparable injury and will continue to suffer ongoing injuries on account of the Defendant's impermissible challenges that impose litigation costs and other unnecessary burdens on Plaintiff and the Debtors' estates and threaten

23

their ability to reorganize. An award of damages is inadequate because of this and because of the likelihood that Defendant will continue to breach the Intercreditor Agreement, inflicting further harm on Plaintiff and the Debtors' estates. A permanent injunction would avoid a multiplicity of suits by preventing future breaches causing additional harm and streamlining the plan confirmation process.

64.     In addition, the harm threatened to Plaintiff and the Debtors' estates by the Defendant's conduct substantially outweighs any harm the Defendant would suffer from an injunction. The Second Lien Secured Parties are sophisticated entities that expressly bargained away their right to bring these challenges and seek the payments and distributions sought in connection with the Administrative Claim Motion in the negotiations that led to entry into the Second Lien Credit Agreement and the Intercreditor Agreement. Moreover, the Second Lien Secured Parties expressly agreed in section 3.2 of the Intercreditor Agreement that injunctive relief was an appropriate remedy for the First Lien Secured Parties in the event of a breach thereunder.

65.     Defendant would therefore not suffer any undue hardship from being compelled by injunction to honor the terms of its binding contractual obligations. Similarly, granting an injunction that holds the Second Lien Secured Parties to the express terms of their agreement would not contravene a substantial public interest. Accordingly, Plaintiff respectfully requests a permanent injunction barring the Defendant from breaching the Intercreditor Agreement, including, *inter alia*, by receiving any payments with respect to Collateral, including on account of the relief sought in the Administrative Claim Motion.

**THIRD CAUSE OF ACTION**
**Declaratory Judgment Under 28 U.S.C. § 2201 That Defendant Must Turnover Any**
**Payment or Distribution Received with Respect to Collateral**
**Absent Discharge of First Lien Obligations**

66.     Plaintiff repeats and realleges paragraphs 1-65 as if fully set forth herein.

67.     Section 510(a) of the Bankruptcy Code provides that a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

68.     Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy Code, which will be effective before, during and after the commencement of an Insolvency or Liquidation Proceeding." Ex. A, ICA § 6.10.

69.     Under the Final DIP Order, and pursuant to section 510(a) of the Bankruptcy Code, the Intercreditor Agreement remains in full force and effect and continues to govern the relative priorities, rights, and remedies of the First Lien Secured Parties and the Second Lien Secured Parties, and, the Court retains jurisdiction to "hear, determine and, . . . enforce the terms of any and all matters arising from or related to" the DIP Facility, the DIP Loan Documents, the Intercreditor Agreement, and the Final DIP Order. Final DIP Order ¶¶ 37, 48.

70.     As the representative and signatory for the First Lien Lenders, Plaintiff is a party to the Intercreditor Agreement and an intended beneficiary of its provisions that definitively establish the respective priority rights of the First Lien Secured Parties and Second Lien Secured Parties in the Collateral, and the limitations on the manner in which the Second Lien Secured Parties may seek to enforce their rights with respect to Collateral before the First Lien Obligations are discharged. A related purpose of these provisions is to ensure that any restructuring or bankruptcy

proceeding by the Debtors not be delayed or frustrated by disputes among creditors regarding the priority of payment.

71.     The Intercreditor Agreement expressly requires the Second Lien Secured Parties to pay-over any proceeds received from Collateral, such as any payment on account of the claim sought in the Administrative Claim Motion, which would otherwise be paid of, or in respect to, Collateral, or any proceeds therefrom, absent all First Lien Obligations being paid in full in cash. *See* Ex. A, ICA §§ 1.1, 4.2; *see also id.* § 6.3(b).

72.     By filing the Administrative Claim Motion and seeking an order allowing the AP Claim, the Second Lien Movants, including the Defendant, have created an actual controversy within the meaning of 28 U.S.C. § 2201. Accordingly, Plaintiff respectfully requests a judgment pursuant to 28 U.S.C. § 2201 declaring the parties' respective rights and obligations under the Intercreditor Agreement, including the Defendant's contractual obligation to turnover to the Plaintiff any amounts received by the Second Lien Secured Parties of, or with respect to, Collateral, or proceeds therefrom, including any amounts that would be paid to the Second Lien Secured Parties on account of any claim of the type and amount sought in the Administrative Claim Motion, before discharge and satisfaction in full of the First Lien Obligations.

73.     Plaintiff and Defendant are parties to the valid and binding Intercreditor Agreement, which is clear on its face and enforceable against the Defendant. Requiring the Defendant to abide by its terms will ensure that the resources of the estates are not wasted litigating issues that the Defendant has contractually agreed not to litigate. A declaration of the parties' rights under the Intercreditor Agreement is an expedient and efficient means of attaining the ends of justice and its prompt administration.

74.     Further, the issues raised by the Defendant's breaches of the Intercreditor

Agreement have an immediate connection to the Debtors' bankruptcy proceedings and, in particular, its ability to successfully reorganize. An adjudication of the parties' respective rights under the Intercreditor Agreement would have a direct impact on that process and could significantly affect the likelihood and efficiency of confirming the Plan.

75.    Accordingly, a real and substantial controversy exists between the parties with adverse legal interests and with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### FOURTH CAUSE OF ACTION
**Injunctive Relief Requiring Defendant to Turnover Any Payment or Distribution Received with Respect to Collateral Absent Discharge of First Lien Obligations**

76.    Plaintiff repeats and realleges paragraphs 1-75 as if fully set forth herein.

77.    Section 510(a) of the Bankruptcy Code provides that a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

78.    Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy Code, which will be effective before, during and after the commencement of an Insolvency or Liquidation Proceeding." Ex. A, ICA § 6.10.

79.    Under the Final DIP Order, and pursuant to section 510(a) of the Bankruptcy Code, the Intercreditor Agreement remains in full force and effect and continues to govern the relative priorities, rights, and remedies of the First Lien Secured Parties and the Second Lien Secured Parties, and, the Court retains jurisdiction to "hear, determine and, . . . enforce the terms of any and all matters arising from or related to" the DIP Facility, the DIP Loan Documents, the Intercreditor Agreement, and the Final DIP Order. Final DIP Order ¶¶ 37, 48.

80.    As detailed above, pursuant to the Intercreditor Agreement, Defendant is required

to pay-over any payment or distribution received of, or in respect to, Collateral, or any proceeds therefrom, unless and until the First Lien Obligations are paid in full in cash. *See* Ex. A, ICA §§ 1.1, 4.2; *see also id.* § 6.3(b).

81.    Absent a permanent injunction preventing Defendant from breaching the Intercreditor Agreement and requiring Defendant to pay-over any payment or distribution received of, or in respect to, Collateral, or any proceeds therefrom unless and until the First Lien Obligations are discharged, Plaintiff will suffer irreparable injury, including with respect to the Defendant's impermissible challenges, including the Administrative Claim Motion, that impose litigation costs and other unnecessary burdens on Plaintiff and the Debtors' estates and threaten the Debtors' ability to reorganize. An award of damages is inadequate because of this and because of the likelihood that the Defendant will continue to breach the Intercreditor Agreement, inflicting further harm on Plaintiff and the Debtors' estates. A permanent injunction would avoid a multiplicity of suits by preventing future breaches causing additional harm and streamlining the plan confirmation process.

82.    In addition, the harm threatened to Plaintiff and the Debtors' estates by the Defendant's conduct substantially outweighs any harm the Defendant would suffer from an injunction. The Second Lien Secured Parties are sophisticated entities that expressly bargained away their right to (i) bring challenges such as the Administrative Claim Motion and (ii) receive and retain payments and distributions with respect to Collateral absent the First Lien Obligations' payment in full in cash, in the negotiations that led to entry into the Second Lien Credit Agreement and the Intercreditor Agreement. Moreover, the Second Lien Secured Parties expressly agreed in section 3.2 of the Intercreditor Agreement that injunctive relief was an appropriate remedy for the First Lien Secured Parties, and, they similarly agreed that any payments or distributions they

receive of, or in respect to, Collateral, or any proceeds therefrom, absent payment in full in cash of the First Lien Obligations, must be paid over to the First Lien Secured Parties. Thus, the Administrative Claim Motion is moot or the Second Lien Secured Parties lack standing to file the motion because they have no interest in the resolution thereof, and, the Court should issue an injunction requiring that any payments or distributions the Second Lien Secured Parties receive of, or in respect to, Collateral, or any proceeds therefrom, absent payment in full in cash of the First Lien Obligations, must be paid over to the First Lien Agent.

83.    Defendant would not suffer any undue hardship from being compelled by injunction to honor the terms of its contractual obligations and pay-over any distributions or payments the Second Lien Secured Parties would receive with respect to Collateral, including on account of the claim sought in the Administrative Claim Motion, unless and until the First Lien Obligations are paid in full in cash. Similarly, granting an injunction that holds the Second Lien Secured Parties to the express terms of their agreement would not contravene a substantial public interest. Accordingly, Plaintiff respectfully requests a permanent injunction barring the Second Lien Agent from breaching the Intercreditor Agreement, including, *inter alia*, by failing to pay-over to Plaintiff any distributions or payments obtained by the Second Lien Secured Parties of, or in respect to, Collateral, or any proceeds therefrom, until the First Lien Obligations have been paid in full in cash.

**FIFTH CAUSE OF ACTION**
**Specific Performance**

84. Plaintiff repeats and realleges paragraphs 1-83 as if fully set forth herein.

85. Section 510(a) of the Bankruptcy Code provides that a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

86. Pursuant to the Intercreditor Agreement, the "Parties acknowledge that [the Intercreditor Agreement] is a 'subordination agreement' under section 510(a) of the Bankruptcy Code, which will be effective before, during and after the commencement of an Insolvency or Liquidation Proceeding." Ex. A, ICA § 6.10.

87. Under the Final DIP Order, and pursuant to section 510(a) of the Bankruptcy Code, the Intercreditor Agreement remains in full force and effect and continues to govern the relative priorities, rights, and remedies of the First Lien Secured Parties and the Second Lien Secured Parties, and, the Court retains jurisdiction to "hear, determine and, . . . enforce the terms of any and all matters arising from or related to" the DIP Facility, the DIP Loan Documents, the Intercreditor Agreement, and the Final DIP Order. Final DIP Order ¶¶ 37, 48.

88. As detailed above, the Defendant has breached, and continues to breach, its valid and binding contractual obligations under the Intercreditor Agreement.

89. Specifically, the filing of the Administrative Claim Motion has put the Defendant squarely in breach of sections 3.1 and 6.3 of the Intercreditor Agreement.

90. Section 3.2 of the Intercreditor Agreement expressly provides that, "[i]f any Second Lien Claimholder . . . takes, attempts to or threatens to take any action with respect to the Collateral . . . or fails to take any action required by this Agreement . . . [then] relief against such Second Lien Claimholder by . . .specific performance . . . is necessary to prevent irreparable harm" to the

First Lien Secured Parties.

91.     While Plaintiff has abided by, and continues to abide by, the terms of the Intercreditor Agreement, the Defendant continues to breach its binding contractual obligations. Absent an order for specific performance, an award of damages is inadequate to compensate Plaintiff fully for the harm it will suffer if the Defendant continues to seek remedies in connection with the Administrative Claim Motion. Plaintiff will suffer irreparable harm if the Defendant does not immediately begin to abide by its obligations under the Intercreditor Agreement. Further, an order for specific performance would avoid a multiplicity of suits by preventing future breaches causing additional harm.

92.     Accordingly, Plaintiff respectfully requests an order for specific performance compelling the Defendant to abide by all of its obligations under the Intercreditor Agreement, including, *inter alia*, its obligation to (i) refrain from pursuing an "Enforcement Action" such as the Administrative Claim Motion, (Ex. A, ICA § 3.1(a)(1)), obtaining any payment or distribution of, or in respect to, Collateral, or any proceeds therefrom, unless and until the First Lien Obligations are paid in full in cash, (*id.* §§ 1.1, 3.1(c)), and/or seeking an administrative expense claim senior in priority to any administrative expense claim of the First Lien Secured Parties, (*id.* §§ 1.1, 6.3(b)(2)(C)), and (ii) pay-over any distribution or payment it may receive of, or in respect to, Collateral, or any proceeds therefrom, unless and until the First Lien Obligations are paid in full in cash, (ICA §§ 1.1, 4.2, 6.3(b)).

## RESERVATION OF RIGHTS

93.     Plaintiff reserves the right, to the extent permitted under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or by agreement, to assert any claims relating to the subject matter of this action or otherwise relating to the Debtors and their estates against any third party.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

A.  Declaring that:

    1. Pursuant to the Intercreditor Agreement, neither the Defendant nor the Second Lien Lenders may receive any payment or distribution of, or with respect to, Collateral, or proceeds therefrom, including any payment or distribution on account of a claim of the type sought to be allowed in the Administrative Claim Motion, unless and until the First Lien Obligations are paid in full in cash; and

    2. Pursuant to the Intercreditor Agreement, to the extent of any payment or distribution of, or with respect to Collateral, or proceeds therefrom, including any payment or distribution on account of a claim of the type sought to be allowed in the Administrative Claim Motion, unless and until the First Lien Obligations are paid in full in cash, the Defendant and/or the Second Lien Lenders shall pay-over any such payment or distribution to the First Lien Agent;

B.  A permanent injunction, pursuant to section 3.2 of the Intercreditor Agreement, barring the Defendant and/or the Second Lien Lenders from receiving or obtaining any payment or distribution of, or with respect to, Collateral, or proceeds therefrom, including any payment or distribution on account of a claim of the type sought to be allowed in the Administrative Claim Motion, unless and until the First Lien Obligations are paid in full in cash; and

C.  A permanent injunction, pursuant to section 3.2 of the Intercreditor Agreement, requiring the Defendant and/or the Second Lien Lenders to, to the extent of any payment or distribution of, or with respect to, Collateral, or proceeds therefrom, including any payment or distribution on account of a claim of the type sought to be allowed in the Administrative Claim Motion, unless and until the First Lien Obligations are paid in full in cash, pay-over such payment or distribution to the First Lien Agent.

D.  An order for specific performance, pursuant to section 3.2 of the Intercreditor Agreement, requiring that the Defendant and the Second Lien Lenders:

    1. Comply fully with their obligations under the Intercreditor Agreement in these bankruptcy proceedings; and

     2.    Refrain from prosecuting or filing any Enforcement Action, including the Administrative Claim Motion;

E.  An order granting such equitable or other relief as may be just and proper.


*[Remainder of Page Intentionally Left Blank]*

Dated: March 23, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Elizabeth A. Rogers (No. 7335)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      erogers@lrclaw.com

-and-

**PAUL HASTINGS LLP**

Jayme T. Goldstein (admitted *pro hac vice*)
Daniel A. Fliman (admitted *pro hac vice*)
Jeremy Evans (admitted *pro hac vice*)
Isaac S. Sasson (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: jaymegoldstein@paulhastings.com
      danfliman@paulhastings.com
      jeremyevans@paulhastings.com
      isaacsasson@paulhastings.com

Nicholas A. Bassett (admitted *pro hac vice*)
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
Email: nicholasbassett@paulhastings.com

*Special Litigation Counsel for Wilmington Trust,*
*National Association, as First Lien Administrative*
*Agent and First Lien Collateral Agent*